IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **CHAPTER 11** |
| NAPA HOME & GARDEN, INC. | ) | **CASE NO. 11-69828** |
| | ) | |
| Debtor. | ) | |
| | ) | |
| NAPA HOME & GARDEN, INC. | ) | |
| | ) | |
| Movant, | ) | **CONTESTED MATTER** |
| | ) | |
| vs. | ) | |
| | ) | |
| CORNERSTONE BANK, | ) | |
| | ) | |
| Respondent. | ) | |

**MOTION REQUESTING ENTRY OF INTERIM ORDER
AUTHORIZING THE USE OF CASH COLLATERAL AND
SCHEDULING FINAL HEARING ON DEBTOR'S REQUEST
TO USE CASH COLLATERAL AND REQUEST FOR EXPEDITED HEARING**

COMES NOW Napa Home & Garden, Inc. ("Debtor") and hereby files this "Motion Requesting Entry of Interim Order Authorizing the Use of Cash Collateral and Scheduling Final Hearing on Debtor's Request to Use Cash Collateral and Request for Expedited Hearing" (the "Motion"). In support of the Motion, Debtor shows the Court as follows:

**Jurisdiction**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicate for the relief requested herein is 11 U.S.C. §§ 105(a), 361 and 363.

## **Background**

2.  On July 5, 2011 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (as amended, modified, or supplemented the "Bankruptcy Code").

3.  Debtor is a California Corporation and its primary place of business is located at 3270 Summit Ridge Parkway, Duluth, GA 30096. Debtor is in the business of wholesale sales of home and garden gifts.

4.  Debtor's CEO is Gerald Cunningham.

5.  Pursuant to Bankruptcy Code Sections 1107 and 1108 of the Bankruptcy Code, Debtor continues to operate its business as a debtor-in-possession. Debtor is currently a debtor-in-possession. Contemporaneously with the filing of the Motion, Debtor is filing a Motion to Sell Assets Pursuant to 11 U.S.C. Sec. 363 (the "Sale Motion") to Teters or the highest bidder. Attached to the Sale Motion is a propose Asset Purchase Agreement ("APA") between Debtor as seller and Teters Floral Company, Inc. ("Teters") as seller for the Purchase Price of $1,100,000 (subject to adjustment based on inventory levels at closing). Debtor intends to close a sale of the Acquired Assets to Teters or the highest bidder in short order.

6.  In order to complete the sale proposed by the Sale Motoin, Debtor must preserve its going concern value and have access to cash to pay its operating expenses and salaries. Specifically, Debtor's next payroll is due July 14, 2011. Debtor's payroll company must have access to the funds to meet Debtor's next payroll on or before July 14, 2011. If Debtor does not have the authority to use its available cash to make payroll, it will not have the staff necessary to continue to operate it business. Moreover, Debtor must be able to fill orders from customers,

which requires maintenance of its warehouse (including rent and utilities) and other operating costs.

**Liens**

7.  Upon information and belief Cornerstone Bank ("Cornerstone") asserts a first priority security interest in Debtor's assets including all cash and non-cash proceeds thereof pursuant to the UCC Financing Statement 18560990002 filed on September 25, 2008 with the California Secretary of State and listing Napa Home & Garden, Inc. as debtor. A true and correct copy of the UCC Financing Statement is attached hereto and incorporated by reference herein as Exhibit "A".

8.  Debtor anticipates that the pay-off on Cornerstone's lien is approximately $1,089,897.00.

9.  Debtor sets forth its total anticipated expenses for the first 60 days following the Filing Date in the proposed budget ("Budget") attached hereto and incorporated by reference herein as Exhibit "B".

**Relief Requested**

10. By this Motion, Debtor requests that the Court schedule an expedited hearing to avoid immediate and irreparable harm on or before Thursday, July 7, 2011 and issue an interim order authorizing the use of cash collateral based on the Budget attached hereto provided that: (i) Debtor shall be authorized to pay the actual amount owed to any utility: (ii) Debtor shall be authorized to pay the actual amount owed to any insurance company or taxing authority, which comes due after the Petition Date; (iii) Debtor shall be authorized to pay any United States Trustee quarterly fees; and (iv) Debtor may exceed the budgeted amount for any line item on the Budget by 10%. Debtor further requests that the Court schedule a final hearing on cash

collateral use and, following such hearing, enter a final order authorizing the continued use of cash collateral.

**Basis for Relief**

11. Section 363(c)(2) provides that a debtor in possession may not use cash collateral unless an entity that has an interest in such cash collateral consents or the court approves the use of such cash collateral. Section 363(o) provides that at a hearing on the use of cash collateral, the entity asserting an interest in the cash collateral has the burden of proof on the issue of the validity, priority, or extent of such interest, and the debtor in possession has the burden of proof on the issue of adequate protection. Rule 4001(b)(2) provides that the Court may not hold a final hearing on a motion to use cash collateral until earlier than 14 days after service of the motion, but may authorize the use of cash collateral prior to a final hearing as necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

12. The Debtor has an immediate need to continue the operation of the business. Without the use of cash collateral and the ability to operate, the Debtor will not be able to pay wages, salaries, and operating expenses necessary to the continuity of the Debtor's operations and effective reorganization.

13. The entry of an Order granting the Debtor's Motion to use cash collateral will minimize disruption of the Debtor's activities and is in the best interests of the Debtor's estates and its creditors. Therefore, it is in the interest of no one for any interruption to occur during the Debtor's reorganization.

14. Moreover, Debtor must continue to operate in order to effectuate the sale of its material assets as contemplated by the Sale Agreement. The proceeds generated by such sale

will satisfy Cornerstone's lien in full and in short order. Accordingly, Cornerstone's lien upon Debtor's Cash Collateral is adequately protected.

15. Notice pursuant to Federal Rule of Bankruptcy Procedure 4001(b) is being sent to all parties required by such rule. Specifically, notice of this Motion and any hearing thereon shall be provided to each Respondent, the United States Trustee and the parties reflected on the Debtor's List of 20 largest unsecured creditors filed pursuant to Bankruptcy Rule 1007(b). The Debtors requests that the Court schedule a preliminary hearing pursuant to Bankruptcy Rule 4001(b)(2) to authorize the use of cash collateral necessary to avoid immediate and irreparable harm to the Debtor's estate (pending a final hearing) on or before Thursday, July 7, 2011. The Debtor requests that the Court schedule a final hearing on use of cash collateral as soon as practicable, but no earlier than 14 days after service of this Motion.

16. The Debtor will request that the Court approve the expenditures reasonably necessary for the continued operation of the Debtor's business affairs, on a preliminary basis, through the date of the final hearing on this Motion. At the final hearing on this Motion, the Debtor requests that the Court approve the payment of such reasonable and necessary expenses.

WHEREFORE, for all of the above reasons, the Debtor requests that the Court:

(a) hold a preliminary expedited hearing on this Motion on or before Thursday, July 7, 2011 in order that the Debtor may be authorized to pay expenses and other expenditures reasonably necessary for the continued operation of the Debtor's business affairs until such time as a final hearing may be held, so that immediate and irreparable harm to the estate may be avoided;

(b) schedule a final hearing on use of cash collateral so that the Debtor may be authorized to pay reasonable and necessary operating expenses for the time period following the final hearing; and

(c) grant the Debtor such other and further relief as may be just and equitable.

RESPECTFULLY SUBMITTED this 5th day of July, 2011

                                                  **JONES & WALDEN, LLC**

                                                  *s/ Leslie M. Pineyro*
                                                  Leslie M. Pineyro
                                                  Georgia Bar No. 969800
                                                  Leon S. Jones
                                                  Georgia Bar No. 003980
                                                  Proposed Attorneys for Debtor
                                                  21 Eighth Street, NE
                                                  Atlanta, Georgia  30309
                                                  (404) 564-9300
                                                  (404) 564-9301 Facsimile
                                                  lpineyro@joneswalden.com

Exhibit "A"

08-7173429314
09/25/2008 17:00

FILED
CALIFORNIA
SECRETARY OF STATE

SOS

18560990002   UCC 1 FILING

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Mark D. Euster
Weissmann & Zucker, P.C.
3490 Piedmont Road, NE, Suite 650
Atlanta, GA 30305

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (1a or 1b) – do not abbreviate or combine names

1a. ORGANIZATION'S NAME: NAPA Home & Garden, Inc.

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3270 Summit Ridge Parkway | Duluth | GA | 30096 | USA |

1e. TYPE OF ORGANIZATION: Corporation
1f. JURISDICTION OF ORGANIZATION: California
1g. ORGANIZATIONAL I.D.#: C2181735

3. SECURED PARTY'S NAME

3a. ORGANIZATION'S NAME: Cornerstone Bank

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6045 Atlantic Boulevard | Norcross | GA | 30071 | USA |

4. This FINANCING STATEMENT covers the following collateral:
All assets of Debtor now owned or hereafter acquired, and any additions, replacements, accessions, or substitutions thereof and all cash and non-cash proceeds and products thereof.

8. OPTIONAL FILER REFERENCE DATA 20080359

FILING OFFICE COPY – NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

Exhibit "B"
Estimated Cash Flow
July - August 2011

|  | July 2011 | August 2011 | Total |
|---|---:|---:|---:|
| Sales without Direct Ship | 514,350.00 | 514,350.00 | 1,028,700.00 |
| Direct Ship Sales | 176,321.00 | 14,459.00 | 190,780.00 |
| Total Sales | 690,671.00 | 528,809.00 | 1,219,480.00 |
| Cash In from Operations | 427,973.55 | 632,785.91 | 1,060,759.46 |
|  |  |  |  |
| Operating Expenses |  |  |  |
| Whse | 90,785.00 | 90,785.00 | 181,570.00 |
| Personnel | 63,426.46 | 60,964.92 | 124,391.38 |
| General Office /Admin | 24,388.00 | 24,388.00 | 48,776.00 |
| Selling | 63,026.50 | 63,026.50 | 126,053.00 |
| Product Development | 3,300.00 | 3,300.00 | 6,600.00 |
| Total Fixed | 244,925.96 | 242,464.42 | 487,390.38 |
|  |  |  |  |
| Cash available after Operating Expenses | 183,047.59 | 390,321.49 | 573,369.08 |
|  |  |  |  |
| Napa Purchases | 105,000.00 | 105,000.00 | 210,000.00 |
| Direct Purchase | 2,800.00 | 112,498.00 | 115,298.00 |
| Freight & Duty | 80,000.00 | 45,000.00 | 125,000.00 |
| Total Cash Outlay | 187,800.00 | 262,498.00 | 450,298.00 |
|  |  |  |  |
| Cash after Purchases | -4,752.41 | 127,823.49 | 123,071.08 |
|  |  |  |  |
| Extra Ordinary Expenses |  |  |  |
| Accounting | 5,000.00 | 5,000.00 | 10,000.00 |
| Creditor Notice | 70,000.00 | 32,500.00 | 102,500.00 |
| Total Extra Ordinary Expenses | 75,000.00 | 5,000.00 | 10,000.00 |