IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re: ) | |
| ) | **Chapter 11** |
| **NAPA HOME & GARDEN, INC.,** ) | |
| ) | **Case No. 11-69828** |
| Debtor. ) | |

**MOTION OF THE DEBTOR FOR ENTRY OF ORDERS PURSUANT TO
11 U.S.C. §§ 105, 363, AND 365 (A) AUTHORIZING AND SCHEDULING AN
AUCTION AT WHICH THE DEBTOR WILL SOLICIT THE HIGHEST OR BEST
BID FOR THE SALE OF THEIR ASSETS; (B) APPROVING AUCTION AND BIDDING
PROCEDURES GOVERNING THE PROPOSED SALE; AND (C) APPROVING THE SALE
OF THE ASSETS TO THE PARTY SUBMITTING THE HIGHEST OR BEST BID**

Napa Home & Garden, Inc. ("Debtor") files this motion (the "Sale Motion") for entry of (i) following an initial, emergency hearing (the "Bid Procedures Hearing"), an order (the "Bidding Procedures Order") approving a sale and bidding process as hereinafter described to be used in connection with the proposed sale of certain assets (the "Acquired Assets") comprising the Debtor's wholesale home goods business (the "Business"), and (ii) following a final hearing (the "Sale Hearing"), an order (the "Sale Order") approving the sale by the Debtor of the Acquired Assets to Teters Floral Products, Inc. ("Teters ") or to the bidder submitting the highest or best bid for the Acquired Assets in connection with the sale and bidding process. In support of this Sale Motion, the Debtor respectfully show the Court as follows:

**Jurisdiction**

1.    This Court has jurisdiction over this Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**Background**

2.    Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on July 5, 2011.

3.    The Debtor has continued in possession of its property and has continued to operate and manage its business as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No official committee of unsecured creditors has been appointed in this case, and no request has been made for the appointment of a trustee or

1

examiner.

## Basis for Relief

4.  The Debtor is currently engaged in operating the Business. Due in large part to issues related to the fire light pots and gel fuel market, over the past few weeks, the Business has experienced significant operating difficulties and projects a lack of available capital and liquidity. As a result, the Debtor has been forced to operate the Business under severe operational and liquidity constraints and the Debtor anticipates being unable to take the steps necessary to run the Business in a profitable manner.

5.  Prior to the events of the past few weeks related to the fire light and gel fuel market, Debtor was exploring the sale of the Business and anticipated closing a sale with Teters which would have produced a material cash profit. However, a few weeks ago, Debtor learned that it has significant exposure related to personal injury and product liability claims related to the fire light and gel fuel market in which Debtor is heavily concentrated. Accordingly, Debtor determined that its going concern value had been significantly devalued. Moreover, Debtor has determined that in light of the fire light and gel fuel issues which will result in huge litigation expenses and massive customer returns, Debtor cannot expect to operate for much longer. In short, Debtor will run out of cash to operate in a short time and its only opportunity to sell as an operating entity and generate any proceeds for creditors is now.

6.  Debtor previously explored the possibility of the sale of its Business and believes Teter's represents the only potential purchaser available to purchase Debtor's business in light of the loss of Debtor's largest market in an expeditious manner.

7.  The Debtor's efforts culminated in the negotiation and execution of a Purchase and Sale Agreement with Teters dated July 1, 2011 (the "Agreement"), a true and correct copy of which is attached hereto as <u>Exhibit A</u>.[1] The Agreement contemplates the sale of the Acquired Assets to Teters (subject to higher or better bids) and contains the following material terms:

---

[1] The following description of the Agreement is qualified in its entirety by the language of the Agreement. In the event there is any conflict between the description of the Agreement contained in this Motion and the provisions of the Agreement, the provisions of the Agreement shall govern and control. Capitalized terms used in this description not otherwise defined shall have the meanings ascribed to them in the Agreement.

- Acquired Assets - The Acquired Assets include, without limitation, all of Seller's direct and indirect right, title and interest in and to the following:
  - (a) the Assumed Contracts;
  - (b) all Accounts Receivable;
  - (c) all of Seller's Intellectual Property;
  - (d) all Equipment;
  - (e) all prepaid expenses incurred or paid by the Seller prior to the Closing other than any prepaid expenses related to the Seller's insurance policies and prepaid Taxes;
  - (f) all Inventory, other than Excluded Inventory, as of the Closing (the "Acquired Inventory");
  - (g) all Universal Product Codes with respect to Acquired Inventory;
  - (h) all books and records (other than the Excluded Books and Records), including customer and supplier lists and related customer and supplier information;
  - (i) all rights, recoveries, refunds, counterclaims, rights to offset, choses in actions, rights under all warranties, representations and guarantees made by suppliers of products, materials or equipment or components thereof, other rights and claims (whether known or unknown, matured or unmatured, contingent or accrued) against third parties resulting from, arising out of or otherwise with respect to any of the Acquired Assets or Assumed Obligations; and
  - (j) all other intangible rights and properties, including goodwill of the Seller as a going concern and all e-mail, website, Internet, facsimile and telephone numbers used by the Seller.
- Deposit - $100,000, tendered on the execution date of the Agreement;
- Purchase Price – Consideration in the amount of $1,100,000.00 (subject to a purchase price adjustment based on Inventory levels at closing), to be paid in immediately available funds at closing (less the Deposit);
- Assumed Liabilities – Buyer shall pay post-closing liabilities under the Assumed Contracts and subject to certain conditions post-petition unpaid trade payables related to the Acquired Inventory based on Seller's landed cost (i.e. purchase price, freight and delivery charges);

3

- Cure Costs - The Debtor is responsible for paying all pre-closing "cure" amounts related to all contracts assumed by the Debtor and assigned to Teters pursuant to the Agreement; the Buyer shall assume and pay all post-closing obligations arising under the Assumed Contracts; and
- Postclosing Indemnification by Debtor – none.

9.      The Agreement will be "tested" in the marketplace by the sale and bidding process described below so as to ensure that the estate realizes the maximum value for the Assets. The Debtor has developed the following proposed process for continuing to market the Assets for sale (the "Proposed Sale Process"). In connection therewith, the Debtor requests that this Court approve the Proposed Sale Process, including the Auction and Bidding Procedures which are reflected in <u>Exhibit B</u> hereto.

10.     The Debtor believes that the Proposed Sale Process offers the best opportunity for the Debtor to maximize the value of the Business and the Assets for the benefit of its estate following reasonable and appropriate marketing efforts and, therefore, the Debtor believes that implementation of the Proposed Sale Process is in the best interests of the estate herein, and should be approved.

## Relief Requested

11.     By this Sale Motion, the Debtor requests that the Court grant the following relief:

(a) Following the Bid Procedures Hearing, enter an order (i) approving the Proposed Sale Process and the Auction and Bidding Procedures, including the procedures for submitting Qualified Bids and the Initial Overbid, conducting the Auction, identifying the Winning Bidder, and the payment of the Breakup Fee and Expenses Reimbursement (as such terms are defined in the Agreement), and (ii) scheduling the Sale Hearing; and

(b) Following the Sale Hearing, enter the Sale Order approving the sale of the Acquired Assets and making the following findings and determinations, among others, with respect to such sale:

(i) the Agreement is assumed by Debtor pursuant to Section 365 of the Bankruptcy Code, and the Agreement and the transactions contemplated thereby are approved;

(ii) Teters shall have and acquire at the closing good, valid and marketable title to the Acquired Assets and the Acquired Assets shall be sold and conveyed to Teters free and clear of any and all Liens, except for the "Assumed Liabilities" (as such

      terms are defined in the Agreement);
- (iii) Debtor shall assume and assign to Teters all of the Assumed Contracts as of the closing date;
- (iv) Debtor shall, on or before the closing date, pay cure costs to the appropriate parties as ordered by the Court so as to permit the assumption and assignment of all Assumed Contracts;
- (v) the Assumed Contracts shall be in full force and effect from and after the closing with non-debtor parties being barred and enjoined from asserting against Teters, among other things, defaults, breaches or claims of pecuniary losses existing as of the closing or by reason of the closing;
- (vi) Teters is acquiring the Acquired Assets "as-is";
- (vii) the results of the Auction are approved;
- (viii) Teters shall be found to be a "good faith" purchaser within the meaning of Section 363(m) of the Bankruptcy Code; and
- (ix) the Court shall waive any stay that would otherwise be applicable to the immediate effectiveness of the Sale Order pursuant to Bankruptcy Rules 6004(h) and 6006(d).

## Argument

12. As stated above, Debtor believes that the Proposed Sale Process provides the Debtor with its best opportunity to preserve and maximize the value of the Business and the Assets for the benefit of its estate and, therefore, the Debtor believes that implementation of the Proposed Sale Process, and approval of any sale that is presented in accordance therewith, is in the best interests of the Debtor's creditors, employees, estates and other stakeholders. As such, the Debtor submits that approval of this Sale Motion and the Proposed Sale Process is consistent with applicable law and should be granted.

**A.**     **Section 363(b) Authorizes the Proposed Sale and Sale Process.**

13. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, in applying this section, courts have required that it be based upon the sound business judgment of the debtor. See In re Chateaugay Corp., 973 F.2d 141 (2d Cir. 1992) (holding that a judge determining a § 363(b) application must find from the evidence presented a good business reason to grant such application); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983) (same); Stephens Indus. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (holding that "bankruptcy court can authorize a sale of all of a chapter 11 debtor's assets under § 363(b)(1) when a sound business purpose dictates such action"); In re Delaware & Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991); In re

5

Phoenix Steel Corp, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that judicial approval of a § 363 sale requires a showing that the proposed sale is fair and equitable, a good business reason exists for completing the sale and that the transaction is in good faith).

14. Although the Debtor cannot predict the results of the Proposed Sale Process and the Auction, the Debtor respectfully submits that the proposed sale and Proposed Sale Process fit squarely within the parameters of the sound business judgment test articulated in the above-referenced authorities.

15. First and foremost, the Debtor has articulated a sound business purpose for any transaction emanating from the Auction. As set forth above, the Debtor does not have sufficient liquidity to continue to operate the Business and, in order to monetize the Assets for distribution to creditors, it is critical that the Debtor be permitted to consummate a sale of the Assets pursuant to the Proposed Sale Process. The Debtor believes that the purchase price reflected in the Agreement is fair and reasonable and the Debtor would be prepared to close a transaction with Teters even if no Initial Overbid is submitted by a competing bidder.

16. The Debtor respectfully submits that the notice and timing of the Proposed Sale Process are adequate and fair, and are reasonably calculated to elicit the highest levels of interest in acquiring the Acquired Assets. As described above, the Debtor has engaged in reasonable and appropriate marketing of the Business and the Assets and strongly believes that its efforts, coupled with the Proposed Sale Process outlined above, will garner the highest and best possible value for the Acquired Assets.

17. The Debtor has made, and will continue to make, diligent efforts to seek out all potentially credible buyers, having already contacted numerous parties prior to the fire light events. As in the case of Delaware & Hudson Ry. Co., the substantial solicitation and marketing efforts of the Debtor supports the proposed process and the reasonableness of any offer ultimately presented through that process.

18. Moreover, because the Proposed Sale Process will create a fair and reasonable environment in which all legitimate and qualified interest in the Business and Assets can be presented in a competitive, open and level playing field, any offer presented in accordance with the terms of the Proposed Sale Process will necessarily be negotiated and presented in good faith. In connection therewith, the Debtor will be prepared to present further evidence of good faith during the course of the Sale Hearing that will satisfy this Court and the mandates of Section 363(m) of the Bankruptcy Code.

19. The Debtor intends to give notice of the Bid Procedures Hearing, the Auction,

the Proposed Sale Process, the Sale Hearing and the proposed sale by the Debtor of the Assets, by mailing a copy of the Sale Motion (or Notice setting forth the terms of the Sale Motion), within two business days, to (i) the Internal Revenue Service and each of the state and local taxing authorities listed on Exhibit C hereto at the addresses set forth on such Exhibit C; (ii) any parties who previously have expressed serious interest in acquiring all or substantially all of the Assets; (iii) counsel to the Debtor's prepetition secured lenders or the secured lenders directly, as applicable, as set forth on Exhibit D hereto at the addresses set forth on Exhibit D; (iv) all entities having requested notices pursuant to Bankruptcy Rule 2002; (v) the Office of United States Trustee for the Northern District of Georgia; (vi) all non-debtor parties to the executory contracts and unexpired leases to be assumed and assigned as part of the sale of the Business; and (vii) all unsecured creditors of Debtor. (The persons listed in clauses (i) through (vii) are referred to collectively as the "Notice Parties"). In addition to the foregoing, the Debtor also proposes to give additional notice by mailing a copy of any Bidding Procedures Order entered by the Court within two business days of its entry to each of the Notice Parties. The Debtor submits that the foregoing is sufficient notice of the Auction, the Proposed Sale Process (if and in whatever form approved at the Bid Procedures Hearing), the Sale Hearing and the proposed sale by the Debtor of the Acquired Assets.

20. By this Sale Motion, the Debtor intends to sell the Business (less the Excluded Inventory) in order to monetize the Assets for distribution to its creditors. The Debtor strongly believes that, in furtherance of this goal, it has done all that is reasonably possible to secure the highest or best possible offer for the Assets under the circumstances, and believes that any sale must be consummated as promptly as practicable in order to prevent any erosion in value of the Acquired Assets. For all of the foregoing reasons, the relief requested in this Sale Motion is a product of sound business judgment and is in the best interests of the Debtor, its creditors, employees, estate and other stakeholders, and should be granted.

21. Accordingly, the Debtor submits that the Proposed Sale Process, and any sale presented in accordance therewith, is warranted and appropriate under the terms and provisions of Section 363(b) of the Bankruptcy Code.

**B.     Section 363(f) Authorizes the Sale Free and Clear of Liens and Other Claims.**

22. The Debtor requests that the sale and transfer of the Assets be approved free and clear of all Liens[2], other than those specifically assumed by the party submitting the

---

[2] Provided and except that the Trade Show Booth may be subject to a Lien pursuant to the Leaf Finance Agreement.

Winning Bid. Such relief is consistent with the provisions of Section 363(f) of the Bankruptcy Code in this case.

23. Section 363(f) provides that a debtor-in-possession may sell property free and clear of any lien, claim or interest of another entity in such property if any of the following circumstances pertain:

> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

24. As indicated by the use of the disjunctive term "or," satisfaction of any one of the five requirements listed in Section 363(f) is sufficient to permit the sale of assets free and clear of Liens. See In re Elliott, 94 B.R. 343, 345 (E.D. Pa. 1988) (stating that Section 363(f) is written in the disjunctive; the court may approve a sale "free and clear" provided that at least one of the subsections is met).

25. In this instance, the Debtor believes that its prepetition secured lender is the only entity holding or asserting a security interest in the Acquired Assets, and the Debtor anticipates that the lender will consent to the transaction presented for approval at the Sale Hearing.

26. However, even if the lender does not consent to the transaction presented for approval at the Sale Hearing, the Debtor is permitted to sell the Acquired Assets free and clear of the lenders' security interest(s) because the proposed sale satisfies the provisions of Section 363(f)(3) of the Bankruptcy Code. Pursuant to the Agreement, the Debtor's primary prepetition secured lender, Cornerstone Bank ("Cornerstone "), will receive cash payments at closing in an amount equal to the fair market value of the collateral securing their respective claims. Specifically, Cornerstone will receive its payoff which is estimated at $1,089,897.00 in full satisfaction of all of claims and Liens held by Cornerstone against the Debtor and/or the Acquired Assets. Moreover, Debtor believes the outstanding balance of the Cornerstone lien is $1,089,897.00.  Thus the full amount of the lien shall be paid at closing.  The amount to be received by Cornerstone should pay the full balance of Cornerstone's secured claim and the

8

full value of its lien. Accordingly, the proposed sale satisfies the requirements of Section 363(f)(3) of the Bankruptcy Code because the proceeds from the proposed sale will be greater than the aggregate value of the Liens held by Cornerstone on the Acquired Assets. See In re Atlanta Retail Inc. f/k/a Wolf Camera, Inc., 456 F.3d 1277 (11th Cir. 2003) (stating that the bankruptcy court had held that the "value of all liens" referenced in Section 363(f)(3) is determined by the market value of the underlying collateral and not the face value of the liens); In re Atlanta Retail, Inc. f/k/a Wolf Camera, Inc., 297 B.R. 299 (Bankr. N.D. Ga. 2003) (J. Mullins) (same); In re Beker Industries Corp., 63 B.R. 474 (Bankr. S.D.N.Y. 1986) (holding that the value of a lien is determined by the value of the collateral securing such lien and not the face value of such lien).

    27.    Moreover, to the extent necessary, the Debtor can also satisfy Section 363(f)(5) of the Bankruptcy Code. Specifically, the "cram down" provision of Section 1129(b) of the Bankruptcy Code sets forth a "legal or equitable proceeding" pursuant to which a secured creditor can be compelled to "accept a money satisfaction" on account of its security interest in satisfaction of Section 363(f)(5) of the Bankruptcy Code. See, e.g. In re Grand Slam U.S.A. Inc., 178 B.R. 460 (E.D. Mich. 1995) (holding that "cram down' 'provisions of Section 1129(b) satisfy "legal or equitable proceeding" requirement of Section 363(f)(5)); In re Gulf States Steel Inc of Alabama, 285 B.R. 497 (Bankr. N.D. Ala. 2002) (same); In re Terrace Chalet Apartments Ltd 159 B.R. 821 (N.D. Ill. 1993) (same); but see In re PW. LLC, 391 B.R. 25 (B.A.P. 9th Cir. 2008) (holding that "cram down" provision of Section 1129(b) did not satisfy "legal or equitable" proceeding requirement of Section 363(0(5)). However, under Section 1129(b) of the Bankruptcy Code, a secured creditor is generally entitled to either (a) retain its security interest in its collateral, (b) receive payment(s) on account of the value of its security interest (if any), or (c) have its security interest attach to the net proceeds of the sale of its collateral. See 11 U.S.C. §§ 1129(b)(2)(A)(i)-(ii); see also In re Riverside Inv. P'ship, 674 F.2d 634, 640 (7th Cir. 1982) (holding that liens attach to sale proceeds in same order and priority as liens held against collateral sold by trustee under prior Bankruptcy Act). In this case, the Debtor proposes that (a) Cornerstone will receive the aforementioned payment at closing in full satisfaction of any Liens held by Cornerstone, and (b) any Liens in the Acquired Assets (other than Assumed Liabilities) held by creditors other than Cornerstone will attach to the net proceeds of the sale, subject to any claims and defenses that the debtor may possess with respect thereto.

    28.    Accordingly, the requirements of Section 363(f) of the Bankruptcy Code can

be satisfied, and the sale of the Acquired Assets free and clear of all Liens is appropriate.

**C.    The Winning Bidder Should Be Afforded All Protections Under Bankruptcy Code Section 363(m) as a Good Faith Purchaser.**

29.    Section 363(m) of the Bankruptcy Code provides that "the reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith ..." 11 U.S.C. § 363(m).

30.    As discussed above, the Proposed Sale Process and the bidding procedures contemplated as a part thereof (if and in whatever form approved at the Bid Procedures Hearing), have been designed to create a fair, open and level playing field. Accordingly, the Debtor requests that the party submitting the Winning Bid be determined to have acted in good faith and be entitled to the protections of a good faith purchaser under Section 363(m) of the Bankruptcy Code. See, e.g., In re United Press Int'l. Inc., No. 91 B 13955 (FGC), 1992 U.S. Bankr. LEXIS 842, at *3 (Bankr. S.D.N.Y. May 18, 1992). In this regard, the transaction reflected in the Agreement was negotiated by the parties at arm's length and in good faith, and Teters and its affiliates (i) are not "insiders" or affiliates of the Debtor, and (ii) do not have any relationship to the Debtor that has not been fully disclosed to the Court.

**D.    Section 365 Authorizes the Assumption and Assignment of Executory Contracts and Unexpired Leases.**

31.    The Agreement also contemplates the assumption of certain executory contracts and unexpired leases and the assignment of these contracts and leases to Teters. Accordingly, the Debtor also respectfully seek provisions in the Sale Order (i) authorizing the Debtor to assume and assign the Assumed Contracts pursuant to Section 365 of the Bankruptcy Code, (ii) authorizing and directing the Debtor to pay the any cure cost at the closing, and (iii) deeming the parties to the Assumed Contracts adequately assured of future performance.

32.    Section 365(a) of the Bankruptcy Code provides that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Courts evaluate a decision to assume or reject an executory contract or unexpired lease under the "business judgment" standard. See Chateaugay Corp, 973 F.2d at 141; see also In re Gardiner, Inc., 831 F.2d 974, 976 n.2 (11th Cir. 1987); In re Wells, 227 B.R. 553, 564 (Bankr. M.D. Fla. 1998); see also NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984). This standard is satisfied if the debtor determines in its

business judgment that the assumption or rejection of the contract or lease would benefit the estate. See Sharon Steel Corp. v. National Fuel Gas Distr. Corp., 872 F.2d 36, 39-40 (3d Cir. 1989); In re Bicoastal Corp., 125 B.R. 658, 667 (Bankr. M.D. Fla. 1991). The business judgment standard requires that the court approve the debtor's business decision unless that judgment is the product of bad faith, whim, or caprice. See Lubrizol Enter. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985); In re Prime Motor Inns, 124 B.R. 378, 383 (S.D. Fla. 1991).

33. Here, the Assumed Contracts are integral assets of the Business, and the Debtor has determined, in the exercise of its business judgment, that the assumption and assignment of the Assumed Contracts in connection with a sale of the Acquired Assets is necessary to yield significant value and benefit to the Debtor and its estate from the sale of the Acquired Assets.

34. The Debtor also requests that the Court fix the amount of cure costs due under the Assumed Contracts in connection with the requirement in Section 365(b)(1) of the Bankruptcy Code that the debtor in possession, at the time of assumption, cure defaults in any executory contract or unexpired lease being assumed, or provide adequate assurance that the default will be promptly cured. In anticipation of the sale of the Business, the Debtor carefully reviewed its books and records, calculated all of the arrearages and overdue amounts owing on the Assumed Contracts, and determined that the cure costs that should be paid to the non-debtor parties to the Assumed Contracts are as set forth on Exhibit "E".

35. To the Debtor's knowledge, there are no other defaults under the Assumed Contracts that are required to be cured or for which there is compensation due. The Debtor strongly believes that, in furtherance of the goal of maximizing value for its estate and creditors, it has done all that is possible to secure the highest or best possible offer for the Acquired Assets under the circumstances. Accordingly, the Debtor respectfully requests that this Court include in the Sale Order provisions: (i) authorizing the Debtor to assume and assign the Assumed Contracts to Teters (or to the party that submits the Winning Bid) pursuant to Section 365 of the Bankruptcy Code; (ii) fixing the Cure Costs under the Assumed Contracts at the amounts set for on Exhibit "E"; (iii) authorizing Debtor to pay cure costs on any Assumed Contracts; and (iv) deeming the parties to the Assumed Contracts adequately assured of future performance by Teters (or by the party that submits the Winning Bid).

**E.      The Proposed Bid Procedures and Breakup Fee Are Appropriate.**

36.     The Debtor has formulated a bidding process that the Debtor believes will induce prospective competing bidders to expend the time, energy and resources necessary to submit an Initial Overbid, and which the Debtor believes is fair and reasonable in view of the assets to be sold. The Proposed Sale Process and, in particular, the proposed Breakup Fee and Expense Reimbursement, are reasonable and supported by applicable case law.

37.     Historically, bankruptcy courts have approved bidding incentives, including break-up fees awarded to an initial bidder or "stalking horse," in the event of a successful overbid based on the business judgment of the debtor. See, e.g., In re 995 Fifth Ave. Assocs.. L.P. 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1992) (bidding incentives may "be legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking"); In re Integrated Resources Inc. 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (noting that "the business judgment of the Debtor is the standard applied under the law in this district" and applying the standard to a break-up fee).

38.     Under the " business judgment" standard, the Auction and Bidding Procedures proposed by the Debtor should be approved as fair and reasonable. Moreover, the proposed Breakup Fee of $35,000.00 and Expense Reimbursement (up to a maximum of $50,000) are reasonable and generally consistent with the range of bidding protection typically approved by bankruptcy courts in cases in this district. See e.g., In re Case Engineered Lumber Inc., No. 09-22499 (Bankr. N.D. Ga. September 1, 2009) (J. Brizendine) (approving break-up fee equal to 3.5% of the cash purchase price and approving additional expense reimbursement in an amount up to 2.0% of the cash purchase price); In re AtheroGenics, Inc., No. 08-78200 (Bankr. N.D. Ga. March 17, 2009 ) (J. Massey) (approving break-up fee equal to 10% of the cash purchase price and approving additional expense reimbursement in an amount up to 10% of the cash purchase price); In re. Rhodes, Inc., No. 04-78434 (Bankr. N.D. Ga. July 26, 2005) (J. Massey) (approving break-up fee equal to 2.5% of the cash purchase price); In re Dan River, Inc., No. 04-10990 (Bankr. N.D. Ga. Dec. 17, 2004) (J. Drake) (approving break-up fee equal to 5.3% of the cash purchase price); In re American Sports International, Ltd. d/b/a American Athletic, Inc., No. 04-41108 (Bankr. N.D. Ga. June 4, 2004) (J. Bonapfel) (approving break-up fee equal to 2.3% of the cash purchase price); In re Centennial HealthCare Corporation, No. 02-74974 (Bankr. N.D. Ga. July 3, 2003) (J. Massey) (approving expense reimbursement in an amount up to 3.3% of the cash purchase price).

39.     Furthermore, pursuant to the Agreement, if this Court does not enter a Bidding

Procedures Order approving the Breakup Fee, Teters may immediately terminate the Agreement, in which case, Teters shall no longer have any obligations under the Agreement, including, without limitation, the obligation to purchase the Acquired Assets from the Debtor.

40. Therefore, because the procedures and incentives included in the Proposed Sale Process, including the proposed Breakup Fee and Expense Reimbursement, are fair and reasonable, are reasonably calculated to produce the best and highest offers for the Acquired Assets and thereby satisfy the business judgment test, and are within the range of incentives customarily approved by courts, such procedures should be approved in this Chapter 11 case.

## Notice

41. This Sale Motion will be served, and further notice of the Auction, the Proposed Sale Process, the Sale Hearing and the proposed sale by the Debtor of the Acquired Assets will be given, in accordance with the procedures set forth above. The Debtor respectfully submit that such notice is sufficient and proper under the circumstances, and that no other or further notice is required.

WHEREFORE, based upon the foregoing, the Debtor respectfully requests that the Court: (a) enter an order following the Bid Procedures Hearing, substantially in the form attached hereto as Exhibit "B", (i) approving the Proposed Sale Process (including payment of the Breakup Fee and Expense Reimbursement), and (ii) authorizing the Debtor to take all actions reasonably necessary to effectuate such Proposed Sale Process and the sale presented in accordance therewith; (b) enter the Sale Order following the Sale Hearing, approving the highest or best bid for the Acquired Assets and granting the other relief requested in this Sale Motion; and (c) granting such other and further relief as the Court deems just and proper.

This 5th day of July 2011.

**JONES & WALDEN, LLC**
*/s/ Leslie M. Pineyro*
Leslie M. Pineyro
Georgia Bar No. 969800
Leon S. Jones
Georgia Bar No. 003980
Attorney for Debtor
21 Eighth Street, NE
Atlanta, Georgia 30309
(404) 564-9300